Judge Robertson,
delivered the opinion of tbe Court.
Doctor Joseph Boswell, having obtained a judgment against the appellees for $2500 and interest, in the Bourbon circuit court, and issued an execution to enforce the judgment, they filed their bill in chancery in the same court, avering that the consideration of the note on which the judgment had been obtained, was the loan by JosephBoswell to them, of^lSOOin notes of the bank of Kentucky, and $1000 in the notes of the bank of the commonwealth, which were, at the date of the loan, at a depreciation of 53 per cent; charging usury and praying an injunction and final relief.
Boswell in his answer, denies the charge of usury, and denies that the contract was one of loan, but insists that it was a sale.
He states that he owed James Morrison a large sum of money payable on the 6th of February, 1823, and had in his possession Kentucky bank notes, with which he intended to make the payment; but as the bank had refused to redeem its paper in specie, Morrison *48 would not agree to receive it in discharge of bis debt» and advised him to sue the bank or sell its paper on a credit, by either of which expedients he mightconvert the notes into specie. This he accordingly resolved to do, and the appellees hearing of his wish to sell Kentucky bank paper for the purpose of paying the debt to Morrison, proposed to him in Lexington, on the 29th of October, 1821, to purchase $>2,500 of the notes. He states that they were fully apprized of his intention in offering to sell, and consulted Morrison before they bought; that they agreed to execute their note for the amount of the notes, payable in silver on the 6th of February, 1823, the day on which Morrison’s debt was payable, and to allow him (Boswell) six per cent interest in paper until that time; and did execute their note accordingly. All the material facts relied on in the answer, are proved by the subscribing witnesses to the note, and by George Boswell, the latter of whom also proves, that Joseph Boswell directed him to pay over to the appellants, $2500 in notes of the bank of Kentucky, (being deposited with him) which he was about to do, but the appellees agreeing with him, to take ‡1000 in notes on the bank of the commonwealth, then' equal to the other notes, he paid them that amount in commonwealth’s paper, and ‡1500 in Kentucky bank notes.
Evidence in the caso.
¡decree of the circuit court.
Question for decision.
One witness for the appellees, swears that Boswell, in enquiring of him about their condition, stated that he had loaned them a large sum of-money, which he was anxious to receive without defalcation, as it was intended for the payment of a debt he owed to Morrison, and due at the same time. Two other witnesses state that Boswell said that he had “let then) have $2500,” and their impression was that he meant a loan.
The circuit court perpetuated the injunction which had been granted for the difference between specie and bank paper at the depreciation of 53 per cent, the rate of exchange in October, 1821, as proved by two witnesses.
The only question for this court to decide, is whether the transaction between the parties was a loan or a sale?
Depreciated bank paper, not money; nor the ulti- . mate measure of value. It may bo the subject of sale without the imputation of usury.
If anindivid^otefet specie ata future day,in o°the present delivery of depreciated Aether foT a greater or les* amount, not ®vld.enoe per *8 ° u8ury'
That depreciated bank paper, like stocks or other commodities, is a fit subject for contracts of sale or barter, we have no doubt; such paper is not money— it may and does answer some of the purposes of money by common consent; and in contracts or even statutes, particular circumstances may happen sometimes to concur in authorizing the construction that such a currency, was included in the expression, current money, or common currency, or even money in the abstract. But it is not the ultimate standard of value. It may be sold or exchanged for money, or property, or securities for money or property, without any imputation of usury,
Various opinions as to the prospective value of Kentucky and commonwealth bank paper, have been entertained and expressed, and this was peculiarly the case about the time that Boswell and the Clarksons made their contract. One man, in speculating on the future value of Kentucky bank paper particularly, would feel a strong confidence, that in a given time, it would approximate very nearly to, if it should not reach, the specie standard of value. Another, would as confidently apprehend that it would degenerate more and more, like the continental paper. The future value of the paper, like any other commodity in market, would necessarily be contingent and matter of spechlation. If one individual, believing that Kentucky bank paper would be equal to specie in one year, should purchase it for his own promissory note, to the full nominal amount in specie, on a credit of two years, we cannot imagine why he might not so do; nor can we perceive any reason why the circumstance of giving his own note, instead of any other thing in exchange for the banknotes, would taint the contract with Usury. It might be a slight circumstance, tending to strengthen others conducing to the proof of usury. But the contract could not be considered perse an usurious oue.
The cases of Burnham vs. Gentry, and Collins vs. Secrech, decided by the late judges of this court, seem to have no application to this question. In both of those cases there was an acknowledged loan. Nor. *50 on the other hand, do we feel the necessity of any suPPort from the many authorities cited, to prove that there may be a sale of bank notes, stocks, annuities, &c. for a consideration greater or less than the value at the time of sale, without: the infection of usury; without this formidable array of adjudication; the authority of reason, and the .practice of mankind would be amply sufficient.
If a contract for borrowing ami lending, this was certainly usuri-
The reservat^pnntepalate noté, conclusive of the character action, aminS" stamps it usurious.
Then was the inferior court authorized by the proofs to pronounce the contract in this case usurious? If it were a contract* of borrowing and lending, it was . . . . ° ,. 7, ,1 • certainly usurious, because, at the time, the thing borrowed was not worth as much by S3 per cent, as the amount agreed to be returned, and so it might have been on a sale of the paper, to an applicant for a loan. Second Johnson’s Chancery Cases, 537. But without the reservation of interest by Boswell, we should decide that the contract was one of sale. The appellees did not ask for a loan; Boswell intended to sen. These facts would appear if there was no Merest reserved. This is abundantly proved by those who were present when the contract was made; and the declaration of Boswell, (if ever it-was made) that he had loaned the money, is so easily explicable, without contradicting the positive testimony of his witnesses, that even if it had been proved by two witnesses instead of one* it ought not to control the positive denial in his answer, corroborated by the testimony of two witnesses, present during the whole negotiation. But the reservation of interest, although it might have been made on a sale of securities, one for .another, must be construed into evidence of a loan. If the appellants believed that the bank paper would improve, they might have been willing to promise to pay specie for it at a future day; or. if they believed that on the 6th of February, 1 823, the paper would be equal to specie, they might, and probably would have been willing to give their own note for more than the nominal amount in specie. But it is not probable that any such excess would be promised by a separate note for interestt It would have been included in the note for the consideration. The note for interest is a trong indication of a loan, and unexplained, should *51 be conclusive. Day vs. Dunham, 1st Johnson’s Chancery Cases, 193.
Wickliffe and Woolley for appellants; Hanson and. Depew for appellees.
We are, therefore, constrained to concur with the court below, in its construction of the contract.
Decree affirmed with costs.